IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br>  Karen H. Carden,<br><br>    Debtor. | CASE NO. 19-40458-JJR13 |

| | |
|---|---|
| Karen H. Carden and<br>Linda Baker Gore, Chapter 13 Trustee,<br><br>    Plaintiffs,<br>v.<br><br>Ditech Financial, LLC,<br><br>    Defendant. | AP No. 19-40012-JJR |

MEMORANDUM OPINION

Introduction

The Debtor and the Chapter 13 Trustee (the "Plaintiffs") commenced this adversary proceeding against Ditech Financial, LLC ("Ditech") pursuant to Bankruptcy Code (the "Code") § 544(a)(1) and (a)(2) to avoid a security interest Ditech claims in the Debtor's double-wide 1996 Fleetwood mobile home (the "Mobile Home").[1] Those Code sections read as follows:

---

[1] The adversary complaint does not specify whether the Plaintiffs are proceeding under Code § 544(a)(1), (a)(2), (a)(3), or (b), and it repeatedly uses the phrase "hypothetical lien creditor," which would only be applicable under § 544(a)(1) and (a)(2). In their briefs, the Plaintiffs and Ditech at times discuss notice issues as though constructive notice were an issue, as it would be if the Trustee were acting as a hypothetical, bona fide purchaser under § 544(a)(3) and the Mobile Home were real property. As admitted in their reply brief (Doc. 22), despite much discussion of notice and real property principles, the Plaintiffs do not claim bona fide purchaser status and admit the Mobile Home remains personal property. Thus, the court concludes that the Plaintiffs are proceeding under § 544(a)(1) and possibly (a)(2) as well.

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists . . . .

Code § 541(a)(1) and (2). The Debtor is also seeking a valuation of the Mobile Home under Code § 506(a) in the event Ditech's lien is not avoided. Ditech objects to the avoidance of its lien, and disputes the value proposed by the Debtor.

The parties filed cross-motions for summary judgment (AP Docs. 18 and 19 and herein, the "Motions") under Fed. R. Bankr. P. 7056. The court took the Motions under advisement following the submission of briefs. Confirmation of the Debtor's proposed plan in the underlying chapter 13 case has been continued pending a ruling on the Motions. After considering the Motions and submissions in support thereof, the parties' briefs and arguments, the undisputed facts, and the applicable law, the court has determined that Ditech's Motion is due to be granted, and the Plaintiffs' Motion denied, with respect to the issue of whether Ditech's security interest may be avoided by the Trustee under Code § 544(a). Material facts remain in dispute regarding the Mobile Home's value, and both Motions will be denied to the extent they seek to establish such value. While Fed. R. Bankr. P. 7052 expressly provides that the court is not required to state

2

separate findings and conclusions in ruling on a motion under Fed. R. Bankr. P. 7056, the court has, nonetheless, set out its findings and conclusions herein.[2]

Summary Judgment Standard

A motion for summary judgment on the merits of the complaint is controlled by Fed. R. Bankr. P. 7056, which provides that Fed. R. Civ. P. 56 applies in bankruptcy adversary proceedings. The court may grant summary judgment to a moving party when that party demonstrates "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering the merits of a motion for summary judgment, the court's role is not to determine the truth of the matter asserted or the weight of the evidence, but to determine whether the factual disputes, if any, raise genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In making this determination, the facts are to be considered in a light most favorable to the non-moving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Allen v. Board of Public Educ.*, 495 F.3d 1306 (11th Cir. 2007).

> This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to his claims, and on which he bears the burden of proof at trial. To satisfy this burden, the nonmovant cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried, and if not, whether the movant is entitled to a judgment as a matter of law. It

---

[2] This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (b)(2)(K), and both parties have appeared and consented to this court's jurisdiction. Therefore, the court has authority to enter a final order.

3

> is the substantive law that identifies those facts which are material on motions for summary judgment.
>
> When the court considers a motion for summary judgment it must refrain from deciding any material factual issues. All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the nonmovant. The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case."

*Brown v. Mendel*, 864 F. Supp. 1138, 1142–43 (M.D. Ala. 1994), *aff'd sub nom. Brown v. Enstar Grp., Inc.*, 84 F.3d 393 (11th Cir. 1996) (internal citations omitted). "Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

Findings of Fact

The facts are not in dispute, at least regarding the lien avoidance issue, and are set out in detail in the adversary pleadings, the Debtor's chapter 13 petition and schedules in the instant case as well as in her previous bankruptcy cases, and the Motions with their supporting affidavits and evidentiary submissions. Thus, to rule on the § 544(a) lien avoidance issue raised in the Motions, the court must answer only questions of law. However, a material question of fact remains unanswered regarding valuation of the Mobile Home pursuant to Code § 506(a).

On November 15, 1995, the Debtor and her former husband purchased the Mobile Home with the proceeds of a loan from Green Tree Financial Corp-Alabama, Ditech's predecessor before a series of mergers and name changes. The loan is evidenced by a Manufactured Home Retail Installment Contract and Security Agreement signed by the Debtor and her former husband. The Agreement granted Ditech's predecessor a security interest in the Mobile Home, and that security

4

interest was properly noted on the Mobile Home's certificates of title.[3] Ditech filed an in rem claim in this case for $27,324.45 purportedly secured by the Mobile Home (claim 2-2). The parties do not dispute that Ditech has not been paid in full and that the certificates of title show Green Tree as lienholder, and that the lien has not been voluntarily released. The Debtor and her husband divorced in 2004 and the Debtor became the Mobile Home's sole owner. (Doc. 18, Carden Aff. ¶ 3 and Ex. 1.)

The Debtor received a discharge in a prior chapter 7 case (Case No. 01-41405-JSS7) in which Ditech requested and was granted relief from the automatic stay. (01-41405-JSS7 Doc. 9.) The Debtor did not reaffirm the obligation secured by the Mobile Home in that case and, therefore, her personal liability owing to Ditech for the Mobile Home loan was discharged. Following the discharge, the Debtor defaulted and Ditech obtained a judgment for possession of the Mobile Home from a state court in October 2013. (Doc. 19, Dropper Aff. Ex. G.) Ditech had not dispossessed the Debtor when she filed her second chapter 7 case in August 2018 (Case No. 18-41380-JJR7) in which the Debtor indicated her intent to redeem the Mobile Home for $15,500, its alleged value in her Statement of Intent. (18-41380-JJR7 Doc. 9.) However, in that case the Debtor claimed in Schedule A/B that the Mobile Home's value was only $8,000 due to water damage. (18-41380-JJR7 Doc. 1 p. 15, part 7.) Whatever its value, the Debtor never moved to redeem nor tendered any redemption price, and the case discharged and closed without the redemption.

---

[3] The Mobile Home is a "double-wide" and there are two certificates of title, one for each of its two sides.

5

Soon thereafter, the Debtor filed the instant chapter 13 case, in which she is not eligible for another discharge.[4] In this case, the Debtor scheduled Ditech as a creditor holding a secured claim of $8,000 (again reducing the value of the Mobile Home from $15,500 due to needed repairs, as shown on BK Doc. 1 p. 15) and an unsecured claim of $20,861.12 designated as disputed in Schedule D. (BK Doc. 1 p. 19.) Ditech was unable to inspect the Mobile Home and alleged it has a retail value of between $28,262.88 and $19,784.02 depending upon its condition. (Droppers Aff. ¶ 10.)

In the instant case the Debtor scheduled one unsecured claim for $1,500. (BK Doc. 1 p. 23.) However, the claimholder has not filed a proof of claim and the claims bar date has expired. An unscheduled creditor, 1st Franklin Financial, did file a timely claim (claim 1), but it appears to be ripe for disallowance because it was discharged in the Debtor's most recent prior chapter 7 case. And remember the Debtor's personal liability to Ditech was likewise discharged in a previous chapter 7 case. Thus, although the Trustee is the nominal party in interest and asserts she has standing to bring this avoidance action, the benefit of avoiding Ditech's lien would inure not to unsecured creditors—there appear to be none holding allowable claims—but entirely to the Debtor who, if the Plaintiffs are successful in this proceeding, will own the Mobile Home free and clear of Ditech's security interest without any obligation to account for its value through her chapter 13 plan.

After the Plaintiffs filed this adversary proceeding, Ditech requested and received Certified Record Responses (the "DOR Responses") from the Alabama Department of Revenue (the "DOR") in respect to the title of the Mobile Home. (Droppers Aff. Ex. K.) At the bottom of the

---

[4] The Debtor received a discharge in her most recent chapter 7 case, which was filed less than four years ago. Code § 1328(f)(1) disallows a discharge in a chapter 13 case if the debtor received a discharge in a chapter 7 case filed within the preceding four years.

6

first page of DOR Responses were boxes DOR had checked that stated: "Notation here certifies that the Motor Vehicle Division databases of the Alabama Department of Revenue reflect no record for the vehicle identified in this printout." (As discussed below, the DOR is no longer required to maintain records for mobile homes that are over 20 years old.) However, attached to the DOR Responses were "Title Application Snapshots" that disclosed the Mobile Home's title numbers; issue date; purchase date; VINs; make, model, and year; the owners' names—the Debtor and her former husband—together with their address; the lienholder's name—Green Tree (Ditech's predecessor)—together with its address; and the lien date—11/15/1995. Although not material to the court's ruling in this proceeding—constructive notice not being an issue—the information provided by the Snapshots appeared to conflict with the notation at the bottom of the DOR Responses that DOR's databases reflected no record for the Mobile Home.

Applicable Law and Analysis

Although there are several exceptions, Alabama's Uniform Commercial Code, codified in Title 7 of the Alabama Code (1975) (herein cited as "Ala. Code"), states the general rule that "a financing statement must be filed to perfect all security interests . . ." § 7-9A-310(a). The most common exception is noted in § 7-9A-311(a)(2), which provides that "the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to . . . Chapter 8 or Chapter 20 of Title 32 [Ala. Code] . . . which provides for a security interest to be indicated on a certificate of title as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral . . . ."

At the time the Debtor and her husband purchased the Mobile Home in 1995 (before the adoption of the Manufactured Home Certificate of Title Act, effective January 2010, *infra*), the DOR issued certificates of title covering the Mobile Home as then required by §§ 32-8-30 and -

7

39,[5] and because the purchase was financed with the proceeds of a loan provided by Ditech's predecessor, its purchase-money security interest was duly recorded—perfected—on the certificates of title in accordance with § 32-8-61, which states:

> (a) Unless excepted by this section, a security interest in a vehicle for which a certificate of title is required by the terms of this chapter is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle unless perfected as provided in this article.
>
> (b) A security interest is perfected by the delivery to the [DOR] of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within 30 days thereafter, otherwise, as of the time of the delivery.

In 2009 Alabama adopted the Alabama Manufactured Home Certificate of Title Act (Ala. Code § 32-20-1, *et seq.*, and herein the "MHT Act"). The MHT Act became effective January 1, 2010 and thereafter certificates of title for manufactured homes could no longer be issued under Chapter 8 of Title 32,[6] but were required to be issued under the MHT Act. § 32-20-20.[7] Nonetheless, the requirements for the issuance of certificates of title under the MHT Act are virtually the same as those previously required under Chapter 8 (compare § 32-20-20, *et seq.,* with § 32-8-30, *et seq.*), and the same is true with respect to causing security interests to be recorded—

---

[5] Section 32-8-31(10) was amended in 2009, effective January 1, 2010, to prohibit the further issuance of certificates of title for manufactured homes under Chapter 8 of Title 32 for liens entered into from that date forward. Thereafter, all such certificates of title were to be issued under the Manufactured Home Certificate of Title Act, codified at Chapter 20 of Title 32, *infra*.

[6] *See* n. 5, *supra*.

[7] Other than exceptions that do not apply in this proceeding, the MHT Act requires that "every owner of a manufactured home which is in this state and *for which no certificate of title has been issued by the [DOR]*, shall make application . . . for a certificate of title . . . ." § 32-20-20(a) (emphasis added). As mentioned, certificates of title for the Debtor's Mobile Home were issued by the DOR in 1995, before the MHT Act became effective.

perfected—on certificates of title (*compare* § 32-20-40, *et seq., with* § 32-8-60, *et seq.*). In fact, security interests previously perfected under Chapter 8 are expressly recognized as retaining their validity and priority under the MHT Act: "[A] security interest in a manufactured home for which a certificate of title is required by the terms of this chapter is not valid against creditors of the owner or subsequent transferees or lienholders . . . unless perfected as provided in this article *or previously perfected under the terms of Chapter 8 of this title*." § 32-20-41(a) (emphasis added).

Ordinarily, when a manufactured home is sold or becomes subject to a new security interest, the new owner or lienholder applies to the DOR for a new certificate of title on which the name of the new owner or new lienholder will be recorded. §§ 32-20-30,-33,-41,-42. But the MHT Act specifically prohibits the issuance of certificates of title for manufactured homes "designated 1999 and prior year models . . . ." § 32-20-21(4) (amended eff. Jan. 1, 2020 to replace a reference to "more than 20 model years old" with "1999 and prior year models"). Thus, because the Mobile Home is a 1996 model, it is no longer eligible for the issuance of *new* certificates of title on which a new owner or new secured party may record their ownership or security interest. But the MHT Act made no mention of invalidating security interests recorded on *existing* certificates of title for manufactured homes that, because of their age, are no longer eligible for new certificates of title. To the contrary—as quoted in the preceding paragraph—the MHT Act expressly recognizes the continued validity of security interests perfected on certificates of title originally issued under Chapter 8. § 32-20-41(a), *supra*.[8]

Further, the MHT Act at § 32-20-29 allows the DOR to issue a "replacement" for a certificate of title issued under Chapter 20 or Chapter 8 of Title 32 that was "lost, stolen, mutilated,

---

[8] *See also* §§ 32-20-26(c) and 32-8-39(d), both of which provide that "[a] certificate of title issued by the [DOR] is prima facie evidence of the facts appearing on it."

9

or destroyed or becomes illegible . . . ."[9]  There is no restriction on issuing *replacements*—as opposed to *new* certificates of title—for manufactured homes not eligible for new certificates of title due to their age.  Logically, if a replacement for a certificate of title may be issued for a manufactured home originally titled under Chapter 8, the Alabama legislature must have intended that existing certificates of title for manufactured homes, regardless of their age, would remain valid and effective, even though no new certificate of title—as opposed to a replacement—may be issued for such a home.

Not only are new certificates of title no longer issued by the DOR for manufactured homes designated 1999 and prior year models (Ala. Code 32-20-21(4)), the DOR stopped maintaining title records for manufactured homes of that age:

> (5) No title records will be maintained by the [DOR] for any motor vehicle or manufactured home exempted from titling under the provisions of Chapters 8 or 20 of Title 32, Code of Ala. 1975, or any rules promulgated thereunder.
>
> Example: As of January 1, 2012, the title records for the following motor vehicles will no longer be maintained due to the motor vehicles being exempt from titling by statute or rules promulgated thereunder: . . .
> 2. Manufactured homes more than twenty (20) model years old which would include all 1991 and prior year manufactured homes. . . .

Ala. Admin. Code r. 810-5-75-.68(5).[10]

Another section of Chapter 8 confirms the continued perfection of Ditech's security interest.  Alabama Code § 32-8-64.1[11] provides that "any lien or security interests shall be

---

[9] Section 32-8-43 is virtually identical to § 32-20-29.

[10] This Administrative Code provision is apparently the reason the DOR's Responses to Ditech's request for title information for the Mobile Home stated, "that the Motor Vehicle Division databases of the Alabama Department of Revenue reflect no record for the vehicle identified in this printout."  Nonetheless, the DOR did respond by sending Ditech "Title Application Snapshots" which disclosed the Mobile Home's initial title information, including the name of the lienholder.

[11] Except for liens and security interests listed on certificates of title for *manufactured homes*, travel trailers, or vehicles that weigh more than 12,000

10

considered satisfied and releases shall not be required after 12 years from the date of the security agreement as recorded on the certificate of title."[12]  Security interests in manufactured homes (and travel trailers and vehicles that weigh more than 12,000 pounds) are expressly exempt from the 12-year lapse provision of § 32-8-64.1.  Indeed, § 32-8-64.1 confirms that security interests in manufactured homes "shall be satisfied *only* in conformity with Section 32-8-64 . . ." (emphasis added), which in turn provides that "[u]pon the satisfaction of a security interest . . . the lienholder . . . shall . . . execute a release of his or her security interest, in the space provide therefor on the certificate or as the [DOR] prescribes . . . ." § 32-8-64(a).  Neither Ditech nor its predecessor executed a release on the Mobile Home's certificates of title.[13]

---

pounds gross weight, which shall be satisfied only in conformity with Section 32-8-64, any lien or security interest shall be considered satisfied and release shall not be required after 12 years from the date of the security agreement as recorded on the certificate of title. Nothing in this section shall preclude the perfection of a lien or security agreement, or the perfection of an extension of a lien or security agreement beyond a period of 12 years, by application for a new certificate of title on which the lien or security agreement is listed. In order to provide for the continuous perfection of a lien or security interest originally entered into for a period of more than 12 years for a vehicle other than a *manufactured home*, travel trailer, or vehicle that weighs more than 12,000 pounds gross vehicle weight, an application for a second title on which the lien or security interest is listed shall be submitted to the designated agent before 12 years from the date of the security agreement as recorded on the original title. Otherwise, the lien or security interest shall be perfected as provided by Section 32-8-61.

Ala. Code § 32-8-64.1 (emphasis added).

[12] Section 32-8-64.1 allows a creditor to extend its security interest and perfection thereof beyond 12 years by applying, before the 12 years expires, for a new certificate of title on which the lien will again recorded.

[13] Section 32-8-64.2 was added to Chapter 8 in 2011 and thereafter amended in 2013.  It is similar to § 32-8-64.1 except it provides for liens and security interests to be considered satisfied four years (amended from five to four years in 2013) from the date of the security agreement as recorded on the certificate of title for vehicles which are 12 or more model years old.  As with § 32-8-64.1, a lienholder may extend its perfection before the expiration of four years by applying for a new certificate of title on which the lien will again be listed.  Section 32-8-64.2 exempts travel trailers and vehicles weighing more than 12,000 pounds from its 4-year lapse provision

Under Bankruptcy Code § 544(a), a bankruptcy trustee has the "strong-arm" power to avoid any transfer of property or obligation incurred by a debtor if the transfer or obligation (in this case, Ditech's security interest) would be avoidable by a hypothetical creditor whose judicial lien or execution against all property of the debtor sprang into existence when the debtor's bankruptcy petition was filed. "Basically, this means that a trustee can avoid the security interest of a creditor if the security interest was not properly perfected." *Matter of Patterson*, 185 B.R. 354, 357 (Bankr. N.D. Ala. 1995) (Caddell, Bankr. J.). "In the typical bankruptcy case, the trustee will invoke section 544(a) to avoid any interest inferior to h[er] own." *Old W. Annuity & Life Ins. Co. v. Apollo Grp.*, 605 F.3d 856, 864 (11th Cir. 2010). The trustee is the only party with standing to pursue the avoidance as a "hypothetical lien creditor" under Code § 544(a)(1). *American General Fin., Inc. v. Tippins (In re Tippins)*, 221 B.R. 11, 17 (Bankr. N.D. Ala. 1998).[14]

Thus, the question becomes whether under the provisions of the Alabama Code discussed above, the Mobile Home's certificates of title remained effective to preserve the perfection of Ditech's security interest even though no new certificates of title will be issued in the future for new owners or new lienholders, and the DOR is no longer required to maintain title records for the Mobile Home. If the existing certificates of title on which Ditech's security interest is recorded remain effective, then Ditech was perfected on the day the Debtor filed her petition for relief under

---

regardless of their age, but unlike § 32-8-64.1, there is no mention of an exemption for manufactured homes, but for good reason. The MHT Act amended the definitions in § 32-8-2, applicable to Chapter 8, by removing references to a "manufactured home." "The 2009 amendment by Act 2009, No. 09-746, effective January 1, 2010, deleted 'or manufactured home' preceding 'vehicle' or variants throughout the section . . . ." Editor's comments to Ala. Code § 32-8-64.2. Thus, § 32-8-64.2 is not applicable to manufactured homes.

[14] Ditech did not question the Debtor's standing to join the Trustee as a party plaintiff in this adversary proceeding. If Ditech had successfully challenged the Debtor's standing, the result of the court's ruling with respect to the Trustee would not have been different.

12

chapter 13 and its security interest may not be avoided. If not, then the Trustee may avoid the security interest.

The Plaintiffs cite examples of Alabama Code provisions establishing presumed satisfaction of liens: 20 years from the maturity of the debt secured by a real estate mortgages— § 35-10-20; five years from the date of filing for most UCC financing statements, unless continuation statements are filed (without regard to the age of either the lien or the collateral)— § 7-9A-515(a); 30 years from the filing date for an initial financing statement filed in conjunction with a "manufactured-home transaction" (without regard to the age of the lien or the age of the manufactured home)[15]— § 7-9A-515(b); and, as discussed above, 12 years from the date of the security agreement as recorded on the certificate of title for many types of vehicles, other than manufactured homes, travel trailers, or vehicles that weighs more than 12,000 pounds (without regard to the age of the vehicle or the date the title was issued)— § 32-8-64.1. Despite this demonstration that the Alabama legislature knows how to provide for a lapse of lien perfection when that was its intent, the Plaintiffs have not cited any Alabama statute that provides for the presumed satisfaction of a lien against a manufactured home due to either the age of the lien or the age of the home.

---

[15] Section 7-9A-102(54) defines "manufactured-home transaction" as "a secured transaction: (A) that creates a purchase-money security interest in a manufactured home, other than a manufactured home held as inventory; or (B) in which a manufactured home, other than a manufactured home held as inventory, is the primary collateral." Section 32-20-21(4) provides that "[n]o certificate of title shall be issued for any . . . [m]anufactured home designated 1999 and prior year models." Thus, any secured lender, whose collateral is a 1999 or older manufactured home would presumably perfect a *new* lien by filing a manufactured home financing statement because the provisions of Chapter 8 of Title 32 would not apply (*see* § 32-8-60(5), which says Chapter 8 does not apply to liens created in manufactured homes after January 1, 2010), and because Chapter 20 of Title 32 says no certificate of title will be issued for manufactured homes manufactured in 1999 or prior (*see* § 32-20-21(4)).

13

The Plaintiffs rely on § 7-9A-303(b) which provides that "[g]oods cease to be covered by a certificate of title . . . [at] the time the certificate of title *ceases to be effective* under the law of the issuing jurisdiction (emphasis added)." But § 7-9A-303(b) applies only when a certificate of title ceases to be effective. There is no explicit statutory or case-law authority supporting the Plaintiffs' argument that the existing certificates of title for the Debtor's Mobile Home "ceased to be effective." To the contrary, the MHT Act, as noted above, expressly preserves the validity and effectiveness of certificates of title issued under Chapter 8 of Title 32, and before a security interest in a manufactured home may be released, § 32-8-64 requires that the secured party formally execute a release on the face of the certificate of title. Nonetheless, the Plaintiffs urge the court to adopt their argument for three reasons. First, a third party can no longer rely on the perfection and priority rules of the certificate of title statutes (presumably because the DOR regulations provide that it will no longer maintain "title records" for manufactured homes over 20 years old under Alabama Admin. Code r. 810-5-75-.68). Second, an owner-seller cannot use the existing certificate of title to transfer ownership because no new certificate of title will be issued to the purchaser under § 32-20-21(4) because of the Mobile Home's age. Third, a new secured party cannot perfect its security interest via submission of an application to the DOR for new certificates of title on which to record its security interest because no new titles will be issued for the Mobile Home because of its age under § 32-20-21(4).

But the Plaintiffs' arguments are flawed. At least for the Debtor's Mobile Home, the DOR does appear to maintain and did provide partial title records—the DOR Responses showing the initial title information— which gave constructive notice of Ditech's lien. But notice issues are a red herring in any event, because the suggestion that "notice" to third parties is required for a certificate of title to be effective is not relevant, and the Plaintiffs admit as much. Rather, their

14

primary argument is that Ditech's security interest ceased to be perfected because the certificates of title ceased to be effective for any purpose, including continued perfection of Ditech's existing lien, the moment the Mobile Home, because of its age, became ineligible for new certificates of title. According to the Plaintiffs, Ditech's security interest then fell under the UCC's perfection rules for a manufactured home transaction,[16] which would require that a financing statement be properly filed to continue perfection. Because Ditech did not file a UCC financing statement covering the Mobile Home, the Plaintiffs contend perfection of Ditech's security interest lapsed because of the Mobile Home's age, and thereupon would have become subordinate to a judgment lien creditor and likewise subject to avoidance by a trustee under Code § 544(a). The Plaintiffs' arguments conflate the issuance of a new certificate of title with the effectiveness of an existing certificate of title. The Plaintiffs have cited no provision of the Alabama Code, and no Alabama case law, and the court's research has found none, that would support a ruling that existing certificates of title become ineffective based on a manufactured home's age or based upon the age of a security interest recorded on its certificate of title.

To the contrary, § 32-8-64.1, *supra*, dictates that security interests in manufactured homes can be satisfied *only* by following the procedure prescribed in § 32-8-64, which requires that the lienholder formally satisfy its lien by executing a release in the space provided therefor on the certificate of title and delivering the certificate and release to the next lienholder or, if none, to the owner. If the Alabama legislature intended for liens encumbering manufactured homes to age-out like those encumbering many other vehicles, it would not have excepted manufactured homes.

---

[16] *See* n.15, *supra*. This argument would also require the court to read the word "transaction" to include the continuation of perfection for a transaction that actually took place years earlier, so that such a continuation would fall under the definition of a "manufactured home transaction," which is a result not covered by the plain language of the definition in § 7-9A-102(54).

15

And although new certificates of title—to evidence transfer of title or lien perfection—are no longer issued by the DOR for 1999 and older model year manufactured homes, there is no authority supporting the argument that existing certificates of title for such manufactured homes cease to be effective for the purpose of continuing the perfection of existing security interests recorded thereon.

Sections 32-20-26(c) and 32-8-39(d) are identical, and state that "[a] certificate of title issued by the [DOR] is prima facie evidence of the facts appearing on it."[17] Thus, third parties—buyers, secured lenders, and judgment lien creditors—dealing with 1999 and older model year manufactured homes continue to be charged with whatever title information is disclosed on the existing certificates of title that were issued by the DOR for those homes. Those certificates of

---

[17] The Alabama legislature dealt extensively with manufactured homes, and the 2009 amendments to § 32-8-60 provide that chapter 8 (which is the Alabama Uniform Certificate of Title and Antitheft Act) does not apply to a lien on a manufactured home that was exempted under that chapter when the lien was created or to a lien that was created after January 1, 2010. § 32-8-60(5). The 2009 amendment recognized that from January 1, 2010 forward, liens created in manufactured homes are covered not by Chapter 8 but instead by Chapter 20 (the MHT Act). By its terms, Chapter 8 would still apply to Ditech's security interest because it was created before January 1, 2010. However, the Plaintiffs posit that Chapter 20, not Chapter 8, governs the issue of Ditech's continued perfection, because nothing in Chapter 20 excludes from its coverage liens created under Chapter 8, such as Ditech's. (Doc. 18 p.5 n.4.) The court disagrees, and finds the more logical reading is that the Mobile Home continues to be titled under Chapter 8 based on the language of § 32-8-60(5). Section 32-8-60(5) was added to the Alabama Code at the same time as § 32-20-46, which provides in subsection (c) that "[s]ecurity interests in manufactured homes not required to be titled under this chapter or not titled under the terms hereof, which are perfected under any other applicable laws of this state [such as Ditech's lien that was perfected instead under Chapter 8 of Title 32] shall not be affected by this chapter but shall continue in all respects to be governed by such other laws of this state [which would include the provision in Chapter 8 that titles are prima facie evidence of the information shown thereon and that liens against manufactured homes, created under that chapter as Ditech's was, can only be released in accordance with § 32-8-64]." The fact that these provisions were enacted as part of the same legislation in 2009 shows the Alabama legislature knew that some manufactured home certificates of title would continue to be governed by Chapter 8 and not by Chapter 20 and did not intend to bring every existing certificate of title under the control of Chapter 20.

title remain fully effective for all purposes except two: (1) obtaining a new certificate of title to show new ownership and (2) obtaining a new certificate of title to perfect a new security interest. Virtually all secured lenders maintain possession of the certificates of title covering their collateral, and indeed such possession is contemplated in § 32-8-64, and third parties, whether creditors or purchasers, proceed at their own peril without first demanding to see the certificate of title regardless of the manufactured home's age.

If a new security interest were to be created in the Debtor's Mobile Home, for instance, the UCC's provisions that require filing a financing statement would indeed govern perfection because that new secured transaction would be beyond the scope of § 32-20-20 insofar as no new title would be issued due to the age of the Mobile Home. But the existing certificates of title showing the existence of Ditech's security interest do not cease to be "effective" nor cease to maintain perfection as against a lien creditor simply because no new titles would be issued to a new secured party or purchaser, nor because the DOR does not keep ongoing records or copies of the existing title of the Mobile Home because of its age. Ditech's security interest was neither clandestine nor undiscoverable, nor was it ever released voluntarily or by operation of law.

Conclusion

The court concludes that Ditech's security interest in the Mobile Home continues to be perfected and that a judgment lien creditor on the petition date of the Debtor's bankruptcy case would not take priority over Ditech's security interest. Therefore, the Trustee cannot avoid Ditech's security interest under Code § 544(a)(1) or (a)(2), and to that extent, Ditech's Motion (AP Doc. 19) is due to be GRANTED and the Plaintiffs' Motion (AP Doc. 18) is due to be DENIED.[18]

---

[18] Ditech raised a judicial estoppel defense to the Plaintiffs' lien avoidance claims based on the Debtor's commitment to redeem the Mobile Home in her previous chapter 7 case. Of course

17

As previously mentioned, the Debtor's personal liability for the debt owing to Ditech was discharged in her first chapter 7 case. Therefore, the only claim Ditech can have in this case is a secured claim (secured by the Mobile Home as property of the estate) and the value of the Mobile Home will determine the extent of Ditech's claim pursuant to Bankruptcy Code §506(a). The evidence presented in support of the Motions did not establish the value of the Mobile Home, therefore, there exists a material issue of fact—that issue being the value of the Mobile Home— and the Motions are each DENIED to the extent they seek to establish that value. An evidentiary hearing will be scheduled in due course for the court to determine the Mobile Home's value and the amount of Ditech's secured claim.[19] A separate order conforming to this opinion will be issued by the court.

Done this 14th day of February 2020.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE

---

the Trustee was not a party in that previous case. Nonetheless, the court has not addressed that defense and related issues in this opinion.

[19] The parties are encouraged to exchange information about the condition of the Mobile Home and its value, and reach an agreement if at all possible prior to the next plan confirmation hearing.

18